## SMITH v. JOHNSON et al.

### (Circuit Court, D. Nebraska. January 14, 1896.)

ACCRETIONS—PURCHASERS OF PUBLIC LANDS.

Where lands abutting on a river have been surveyed by the United States government in the usual manner, so that the lands fronting on the river are divided into 40-acre tracts or fractional lots, each purchaser of a lot or tract becomes a riparian owner of so much of the then river front as is included within the side boundary lines of his tract or lot, running to the river, and any accretions upon the river front between such lines belong to such purchaser, and are not required to be apportioned among the other riparian owners of adjacent tracts.

This was an action by George W. Smith against Paul C. Johnson and others to recover possession of certain lands formed by accretion to the bank of the Missouri river. Upon the trial in the circuit court, the jury found a verdict for the plaintiff. The defendants move for a new trial.

Kennedy, Gilbert & Henderson, for plaintiff.

Hall, McCulloch & Clarkson, for defendants.

SHIRAS, District Judge. The plaintiff in this action is the owner of lot 11 in the S. E. $\frac{1}{4}$ of section 1 in township 15 N., of range 13 E. of the sixth P. M., situated in Douglas county, Neb., and as the owner thereof he claims title to certain accretions formed to the above lot, which abuts on the Missouri river. The case was tried before a jury, and the pivotal point therein, under the evidence, was as to the rule to be observed in apportioning the accretion among the abutting owners. Upon the part of the defendants it is claimed in support of the motion for new trial, and was so claimed upon the hearing before the jury, that, as the total accretion was of large extent, the plaintiff, as the owner of lot 11, could only claim a proportionate share of the accretion; that the owners of lots 9 and 10 and of the portions of section 2 abutting on the river were entitled to their equitable proportion of the entire accretion; and that it was incumbent upon the plaintiff, in some proper proceeding, to have an apportionment thus made, and until this was done it could not be known where the lines bounding plaintiff's share of the accretion should be run or established, and therefore it could not be known whether the portions of the accretion in the possession of the defendants formed part of the property owned by plaintiff or not. The defendants are not owners of any portion of the lands abutting on the accretion, and the claim is not, therefore, that there should be an apportionment of the accretion between the plaintiff and defendants as co-owners of the property abutting on the Missouri river, but the position taken is, in effect, that as the accretion extends for a greater distance along the river than the frontage of the plaintiff's property, the latter cannot show title to any particular part of the accretion in an action at law, and therefore the plaintiff's suit must fail.

The court instructed the jury that, where lands abutting on the Missouri river had been surveyed by the United States government

in such form that the eastern boundary of the surveyed subdivisions was the river, then each tract thus bounded by governmental lines on the north and south was entitled to the accretion formed on its river frontage, included within such boundary lines; that is to say, that where a 40-acre tract or fractional lot is bounded on the north and south by the usual survey lines extending to the river as an eastern boundary, all land washed away between these north and south boundary lines would by so much diminish the extent of the lot thus bounded, and, on the other hand, that all accretions formed on the river front of a lot so bounded, and within the limits of the north and south lines, extending the same in the line of their original location and direction to keep pace with the growth of the accretion, would become part of the lot, and be the property of the owner of the lot; and further, that as it appeared from the evidence in the case that the premises in dispute were situated between the boundary lines of lot 11, of which plaintiff was the owner, extended to the river front, the plaintiff was, as against the defendants, entitled to the possession thereof. In support of the motion for new trial, the defendants claim that the rule thus laid down by the court was wholly erroneous; that the government survey or boundary lines have no influence in the matter; that the entire accretion belongs to all the lands adjacent thereto; that to properly apportion the accretion among the several riparian owners the plaintiff must show the location and extent of the river front in 1856, when the government survey was made; that the plaintiff must show where the river line was in 1877, and what was the length of the water line at that time, and that this line of 1877 must be apportioned to the present owners with relation to the frontage as it existed in 1856. In support of this contention counsel for defendants cite the cases of Jones v. Johnston, 18 How. 150; Deerfield v. Arms, 17 Pick. 41; O'Donnell v. Kelsey, 10 N. Y. 412; Batchelder v. Keniston, 51 N. H. 496; Kehr v. Snyder, 114 Ill. 313, 2 N. E. 68. None of these cases present the exact question arising in the case now under consideration, and the only general rule deducible therefrom is that, when a division is to be made of an accretion in which several riparian owners are interested, such division is to be made on equitable principles, so that each owner may secure a water frontage proportionate to the water line by him owned before the accretion was formed. If the case before the court presented the question of the mode of dividing the accretion formed in front of a 40-acre tract, between several persons who had purchased parts of the 40, then the cases cited would be applicable.

The court does not hold that there is any fixed and universal rule to be applied without modification to every instance of an accretion formed in front of property held by a number of separate owners, but the rule given to the jury was that, when the United States government surveys in the usual manner public lands abutting on a river, so that the lands fronting on the river are divided into 40-acre tracts or fractional lots, and sells the same in such form, then each purchaser becomes a riparian owner of so much of the then river

front as is included within the side boundary lines of his tract running to the river; and, if the river gradually washes away its bank, each tract or lot will be diminished by the amount washed away from between its boundary lines, and the owner thereof must stand such loss, and he cannot, on any legal or equitable principle, require the adjacent owner to share such loss, even if it be true that their loss has been less than his, or because their lots have gained by accretion what he has lost; and, on the other hand, as each tract is liable to be thus diminished in extent, and its boundary lines to be shortened, it is also liable to be increased in area, and its side boundary lines to be lengthened by the accretions formed upon its front. It must certainly be the law that, if a person owns a 40-acre tract bounded on the north and south by the governmental survey lines and on the east by the river, and there is formed an accretion in front of the tract, but wholly between the north and south boundary lines thereof, such accretion forms part of that 40-acre tract, and the adjacent owners on the north or south cannot assert any title or right, legal or equitable, to the accretion thus lying wholly between the north and south boundary lines extended of the adjacent owner. If, in the progress of time, the accretion grows, and by so doing passes by the extended north and south lines of the tract in front of which it began to form, then the portions outside of these lines, and which in fact are between the side boundary lines of the adjacent tracts, will become accretions to the adjacent tracts. It seems clear that this rule is simple in its application, and will meet the ordinary cases arising out of accretions formed in front of the lands surveyed by the government abutting upon the Missouri and other rivers of the Western country. It may be true, as is urged by counsel for the defendants, that occasionally, owing to the crooked course of many of the Western rivers, fractional lots may be formed, the river front of which may look to the north or south, and that the extension of the side boundary lines of such a lot might intersect with the extended north and south boundary lines of some adjacent tract. Should this occur, then the situation would call for the application of a proper equitable rule to determine how that portion of the accretion lying between the extended lines of each tract should be divided, but the possibility of such an occurrence is no argument against the adoption of the general rule followed by the court, when the only substitute proposed by counsel for defendants is that in every instance of an accretion formed in front of several abutting government tracts an equitable apportionment must be had. The motion for a new trial is overruled.